## IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | | |
|---|---|---|
| **BP EXPLORATION & PRODUCTION INC.;** | * | **CIVIL ACTION NO:** |
| **BP AMERICA INC.** | * | |
| | * | |
| *Plaintiffs,* | * | **DISTRICT JUDGE:** |
| | * | |
| **vs.** | * | **MAGISTRATE JUDGE:** |
| | * | |
| **DEBRA ANNE HAALAND,** | * | |
| **SECRETARY, UNITED STATES** | * | |
| **DEPARTMENT OF THE INTERIOR;** | * | |
| **AND HOWARD CANTOR, DIRECTOR,** | * | |
| **OFFICE OF NATURAL RESOURCES** | * | |
| **REVENUE, UNITED STATES** | * | |
| **DEPARTMENT OF THE INTERIOR** | * | |
| | * | |
| *Defendants.* | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

NOW INTO COURT, through undersigned counsel, comes plaintiffs BP Exploration & Production Inc. and BP America Inc. (collectively, "bp") to allege as follows and to seek the relief set forth below:

1.      bp seeks judicial review of a deemed final decision issued by the Secretary of the United States Department of the Interior ("Interior") under 30 U.S.C. § 1724(h)(2)(B) in bp's administrative appeal of an Order to Perform Restructured Accounting and Pay dated 27 March 2020 (the "Order") and issued by Interior's Office of Natural Resources Revenue ("ONRR"). The Order directed bp (i) to pay a total, cumulative amount equal to $597,424.95 in additional royalties, which cumulative amount is attributable to 123 individual, monetary royalty obligations (each calculated based on the volume of a particular lease product, produced from a particular lease,

during a particular production month); and (ii) to perform an extensive restructured accounting. These directives in the Order are based on ONRR's allegation that bp "failed to support" its transportation deductions during an audit, despite that bp produced voluminous documentation compliant with ONRR's regulations, that ONRR has previously reviewed and approved of bp's deductions of the exact same expenditures, and that ONRR has historically accepted the exact type of documentation that bp produced during the audit as sufficient to support deductions. bp appealed the Order to the Interior Board of Land Appeals ("IBLA"), and bp's appeal was docketed as IBLA-2020-0340. Because the IBLA "fail[ed]" to issue a decision within the timeframe required by statute, the Secretary was "deemed to have": (A) "issued and granted a decision in favor or [bp] as to any nonmonetary obligation and any monetary obligation the principal amount of which is less than $10,000; and" (B) "issued a final decision in favor of the Secretary," triggering bp's right to judicial review, "as to any monetary obligation the principal amount of which is $10,000 or more[.]" 30 U.S.C. § 1724(h).

## The Parties

2.      BP Exploration & Production Inc. and BP America Inc. are corporations organized under the laws of the State of Delaware with their principal place of business in Houston, Texas. (In certain documents in the administrative record underlying this matter, BP Exploration & Production Inc. is referred to as BP Exploration and Production, Inc.)

3.      The defendants herein are: (a) Debra Anne Haaland, Secretary of Interior; and (b) Howard Cantor, Director, ONRR, Interior. Both defendants are being sued in their official capacities.

4.      Out of an abundance of caution, and by cover letter dated 3 October 2024, pursuant to Section 23 of the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1349, bp provided

a "Notice of Violation of the Outer Continental Shelf Lands Act" to the Defendants, the Honorable Jeff Landry, Governor of the State of Louisiana, the Honorable Greg Abbott, Governor of the State of Texas, the Honorable Tate Reeves, Governor of the State of Mississippi, and the Honorable Kay Ivey, Governor of the State of Alabama. A copy of this Notice is attached hereto as Exhibit A.

## Jurisdiction and Venue

5.      This action arises under the Federal Oil and Gas Royalty Management Act ("FOGRMA"), as amended by the Royalty Simplification and Fairness Act ("RSFA"), collectively at 30 U.S.C. §§ 1701 *et seq.*; the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551, *et seq.*; OCSLA; and the Due Process Clause of the Fifth Amendment to the United States Constitution.

6.      The Court has jurisdiction over the subject matter of this action pursuant to 5 U.S.C. § 704 (judicial review of final agency action); 28 U.S.C. § 1331 (federal question); 43 U.S.C. § 1349(b) (OCSLA); and 30 U.S.C. §§ 1724(h)(2)(B), (j) (RSFA). Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202 (declaratory relief). Venue is proper in this district because Defendants may be found in this district. 43 U.S.C. § 1349(b)(1); 28 U.S.C. § 1391(e). *See Superior Oil Co. v. Andrus*, 656 F.2d 33, 41 (3d Cir. 1981).

## Royalty Obligations and Non-Arm's-Length Transportation Deductions

7.      Under RSFA and Interior's royalty collection and enforcement program, an individual royalty obligation accrues on the volume of each lease product (oil, residue gas, natural gas liquids) produced from a particular federal lease during a particular production month. *See* 30 U.S.C. §§ 1702(14), 1724(c), *etc*. And, each royalty obligation "becomes due" at the end of the month following the month of production. 30 U.S.C. § 1724(c).

8.      Under ONRR's royalty valuation regulations, lessees are entitled to deduct the "reasonable actual costs incurred" to transport production to an off-lease sales or valuation

location. *See* 30 C.F.R. §§ 1206.109-111 (2013) (oil), 1206.156-157 (2013) (gas). Among other costs, lessees are entitled to include in their transportation allowances capital costs and operating and maintenance expenses incurred for non-arm's-length transportation. 30 C.F.R. §§ 1206.111(b) (2013) (oil),  1206.157(b) (2013) (gas).

9.      Under ONRR's regulations, lessees may deduct capital expenditures through transportation allowances for years after the capital expenditures are actually incurred through depreciation and a return on undepreciated capital investment. *See* 30 C.F.R. §§ 1206.111(b) (2013) (oil),  1206.157(b) (2013) (gas).

### Recordkeeping, Audits, and Restructured Accounting Orders

10.      Under RSFA, Interior is required to define the "records" that a "lessee, operator, or other person directly involved in . . . transporting . . . oil or gas" must "maintain" to support its royalty accounting "by rule." 30 U.S.C. § 1713(a). Interior's implementing regulations, in turn, provide that a lessee must "retain accurate and complete records necessary to demonstrate" that its royalty payments comply with the regulations. 30 C.F.R. § 1212.51 (2013). The regulations define "records" to include "computer programs, automated files, and supporting systems documentation used to produce automated reports or magnetic tape submitted to the [ONRR.]" 30 C.F.R. § 1212.51 (2013).

11.      Lessees (and other entities subject to the record maintenance obligations under the statute, including entities involved in transporting lease production) must maintain the records required "by rule" (30 U.S.C. § 1713(b)) for seven years (30 U.S.C. § 1724(f)) "after the records are generated" (30 U.S.C. § 1713(b)).

12.     Lessees are not required to obtain ONRR approval prior to deducting non-arm's-length transportation costs. However, royalty payments are subject to audits, including audits focused on verifying proper calculation of non-arm's-length transportation deductions.

13.     Interior must "conduct audits and reconciliations of lease accounts in conformity with the business practices and record-keeping systems which were required of the lessee by the Secretary for the period covered by the audit." 30 U.S.C. § 1711. And, during an audit, the lessee (and/or other entities subject to the record maintenance obligations under the statute) must "provide any information" that ONRR "by rule" required to substantiate royalty payments (including deductions of non-arm's-length transportation costs). 30 U.S.C. § 1713(a).

14.     "Under no circumstance shall a record holder be required to maintain or produce any record relating to an obligation for any time period which is barred by the" seven-year statute of limitations. 30 U.S.C. § 1724(f).

15.     Interior purports to follow the Generally Accepted Government Auditing Standards ("GAGAS") during audits. Under the GAGAS, a company's "general ledger," "accounting records," "spreadsheets," "database extracts," and "electronically stored information" all constitute "records," "source documents," and "documentary evidence" that transactions have occurred. U.S. GOV'T ACCOUNTABILITY OFF., GAGAS (2018), pp. 52, 219, 183.

16.     Interior has never "by rule" (30 U.S.C. § 1713(a)) required lessees to maintain and produce "invoices" to substantiate their royalty accounting.

17.     However, ONRR has developed a policy that lessees must produce "original invoices" to substantiate reported transportation deductions and enforced that policy in a uniform way. For instance, ONRR has imposed this same policy to disallow bp's deductions of non-arm's-length transportation costs in the Order (*see* Order, Enclosure 1, p. 7) as well as in another order

issued to bp and underlying an administrative appeal docketed as ONRR-22-0095 (which administrative appeal is stayed pending the outcome of this lawsuit). And, Interior has incorporated this requirement into the "Substantive Audit Procedures" that its auditors follow during audits.

### bp's Na Kika Properties and Related Transportation Infrastructure

18.     For many years bp has owned interests in numerous offshore federal leases, including (but not limited to) Lease Number 054-007937-0 (Mississippi Canyon ("MC") 383), and Agreement Number 754-397006-A (which includes Lease Numbers 054-008823-0 (MC 522), 054-008831-0 (MC 566), and 054-009821 (MC 520)) (collectively, the "Na Kika Properties").

19.     From 1998 through November 2003, bp and its joint interest partners constructed and installed transportation facilities to handle the movement of production from the Na Kika Properties to a platform located at MC 474. During that time, bp owned an interest in the transportation facilities (including both subsea transportation pipelines (and umbilicals) and the platform) but did not operate those facilities.

20.     As a non-operator of the facilities, bp did not directly manage, oversee, or contract with the companies providing materials and services to construct and install the facilities. Instead, Shell — as bp's joint interest partner and the operator of the facilities from 1998 through November 2003 — managed the construction and invoiced bp for bp's proportionate share of the costs through Joint Interest Billings ("JIBs"). Shell used Joint Accounting Detailed Extracts software ("JADE Software") to submit to bp the cost detail underlying the JIBs on a line-item basis. JADE Software is accounting software that facilitates cost-related data exchanges between companies, including JIBs, and is commonly used throughout industry.

21.     Upon receipt of the detailed cost data transmitted by Shell through the JADE Software, bp routinely remitted to Shell bp's portion of the capital expenses incurred to construct

and install the facilities. Line-item entries identifying the capital costs that bp incurred during the construction of the subsea pipelines, the umbilical lines, and the platform were memorialized in the data sent by Shell to bp through the JADE Software. bp extracted the cost data from the JADE Software into bp's SAP software system, which was configured to match ONRR's electronic royalty reporting requirements. The SAP JIB module facilitated payment of the JIBs and generated a record of the payment.

22.     The JIBs issued by Shell, as reflected in and substantiated by the cost data provided through the JADE Software, are the original documents on which bp's payments for its share of the transportation expenses were based.

23.     Beginning on 26 November 2003, bp became the operator of the platform and the subsea pipelines that service the Na Kika Properties. From that point, forward, bp directly incurred capital expenses and operating and maintenance expenses relating to the transportation facilities. bp recorded the costs that it incurred directly as operator in the JIB module of the SAP program. bp then billed each of the joint interest partners for its proportionate share of the costs.

**bp's Royalty Payments on Production from the Na Kika Properties**

24.     During the relevant timeframe, when bp paid royalties on production from the Na Kika Properties, it routinely deducted its reasonable, actual costs of transportation. The rate that bp used to calculate its transportation deductions was determined on an annual basis and included both non-arm's-length costs and arm's-length costs (the arm's-length costs are not at issue here).

25.     The non-arm's-length costs included capital expenses and operating and maintenance expenses relating to the non-arm's-length subsea pipelines and umbilical lines and the non-arm's-length platform. bp determined a non-arm's-length transportation rate on an annual basis by dividing the transportation costs by the throughput volume. bp used that rate to determine

the transportation allowance for a given production month. Because bp files royalty reports on a monthly basis before the annual volume is determined, bp's initially reported royalties and allowances are estimated and must be "actualized" after-the-fact when bp has the volume data necessary to calculate the allowance for the relevant year.

26.    Based on the cost-spreading principles allowed under ONRR's royalty regulations, bp deducted a fraction of the capital costs that it actually incurred for the transportation facilities from each month's royalty payments on production from the Na Kika Properties. Thus, the original capital expenditures (*e.g.*, costs incurred between 1998 and November 2003) are included in the deductions from the value of the production for royalty purposes over the many years that the capital equipment is used. Further, operating and maintenance expenses are included in the rate calculation for the annual transportation rate that is used to determine transportation deductions in a given month during the year to which the annual rate applies.

27.    As explained above, line-item entries identifying the capital costs that bp incurred during Shell's construction of the subsea pipelines, the umbilical lines, and the platform (starting in 1998 and lasting through November 2003) were memorialized in data provided by Shell to bp through the JADE Software. bp extracted the cost data from the JADE Software into the SAP JIB module to facilitate payment of the JIBs and to generate a record of the payment. Then, bp extracted the cost data relevant for its deductions (that is, some but not all of the costs included in the JIBs) from the SAP software into the Excel workbooks that bp used to calculate a rate for purposes of determining the transportation allowances. bp's Excel workbooks also incorporated cost data extracted from the SAP JIB module for the capital costs and operating and maintenance costs that bp directly incurred after it assumed the role of operator of the transportation facilities. bp used the Excel workbooks to calculate the annual non-arm's-length transportation rates that

were used to determine bp's deductions of non-arm's-length transportation costs. Those Excel workbooks include all information necessary to demonstrate how bp calculated its deductions.

28.    bp's process for calculating its non-arm's-length transportation deductions has been consistent since bp started deducting non-arm's-length transportation costs from the value of the production from the Na Kika Properties.

29.    In keeping with the cost-spreading allowed under the applicable regulations, bp has deducted fractions of the *exact same* capital expenses that it incurred for the construction and installation of the transportation facilities over several years.

30.    ONRR has accepted bp's deduction of capital expenses that it incurred for the construction and installation of the transportation facilities that service the Na Kika Properties for several years.

31.    On 14 September 2017, heavy rainfall from Hurricane Harvey flooded bp's Westlake One office building in the Energy Corridor of Houston, Texas. Prior to the flood, several ONRR auditors regularly occupied office space in bp's Westlake One office building where they conducted audits of bp's royalty payments. ONRR's auditors stored the documentation — electronic and physical — that bp provided to ONRR during those audits in the office space that they occupied at bp's Westlake One office building. bp also stored historical files that supported its royalty payments in the lower floors of its Westlake One office building. The flooding caused by Hurricane Harvey flooded the office space where ONRR's auditors frequently worked, destroying documentation maintained by bp and collected by ONRR during various audits.

**The Audit and the Order**

32.     By Audit Engagement Letter dated 4 September 2018, ONRR initiated an audit of bp's non-arm's-length transportation deductions for the period 31 January 2012, through 31 December 2013 (the "2018 Audit").

33.     During the 2018 Audit, ONRR reviewed bp's transportation allowances deducted from its royalties paid on production from the Na Kika Properties on a sample basis.

34.     In response to ONRR's audit requests, bp provided the Excel workbooks that it used to calculate the rate for determining the non-arm's-length portion of transportation allowances deducted from royalties paid on production from the Na Kika Properties. Those Excel workbooks included data directly extracted from computer programs (*e.g.*, the JADE Program and SAP) and spreadsheets containing bp's calculation for determining the transportation allowance rate for 2013.

35.     The line-item cost data included in the Excel workbooks (extracted directly from other computer programs) is the documentation on which bp based its transportation costs and on which bp based its transportation allowance calculations.

36.     The Excel workbooks included all of the information necessary to determine how bp calculated its deductions and included the same information that bp produced and ONRR accepted as sufficient to substantiate bp's royalty payments in several previous audits, including audits of royalty payments on production from the Na Kika Properties (*e.g.*, an audit commenced in 2009 and designated as 09-00906.001).

37.     On 27 March 2020, ONRR issued the Order, alleging that bp underpaid royalties on the Na Kika production for the period from February 2013, through December 2013, by taking allowances "without support documentation." The Order directed bp, within 60 days, to remit

$597,424.95 in additional royalties on production from the Na Kika Properties for production months February 2013, through December 2013. That total amount alleged due — $597,424.95 — is attributable to 123 individual, monetary royalty obligations (that is, the obligation to pay royalty on the volume of a particular lease product produced from a particular lease in a particular production month), only 18 of which are for a principal amount of $10,000 or more. *See* Order, Enclosure 7.

38.     The Order also directed bp, within the same 60-day period, to perform a "restructured accounting" by "[r]eview[ing] all properties for which bp claimed deepwater transportation allowances on its Form ONRR-2014 for all sales months from February 2013 through present" and "recalculat[ing] oil and gas transportation allowances . . . and pay[ing] additional royalties due for the federal properties for which bp claimed transportation allowances without valid, supporting documentation for the depreciation, return on undepreciated capital investment, and the O&M expenses." Order, Enclosure 1, pp. 2-3. The Order did not include an estimated amount due based on the restructured accounting directive.

39.     ONRR has previously audited (in more than one other audit) the *same* non-arm's-length costs that it reviewed during the 2018 Audit. During those earlier audits, bp produced effectively identical documentation as the documentation submitted in support of the 2018 Audit (where available, bp also submitted invoice documentation during the earlier audits). And, based on those earlier audits, for several years ONRR accepted bp's deductions of the *very same costs* that ONRR disallowed in the Order.

40.     For example, during an audit that started in 2009 and was designated by ONRR as 09-00906.001 (the "2009 Audit"), ONRR reviewed and approved bp's deductions of capital costs

incurred from 2001-04 for fabrication of the Na Kika North FL Pipeline (identified in the JADE records and other electronic files as WBS Element E-003099-14.01.20.06.01).

41.    And, in response to a 13 November 2013, demand that bp submitted to Interior to recover royalty overpayments (the "2013 Refund Demand"), Interior granted bp's deductions of capital costs incurred for the Na Kika transportation facilities. bp's refund demand was supported by effectively identical documentation as the documentation that bp submitted during the 2018 Audit to substantiate its non-arm's-length deductions (*viz.*, the Excel workbooks). Interior partially denied bp's refund demand, based only on its position that the statute of limitations had expired for certain periods covered by the refund demand. In litigation over Interior's partial denial of that refund demand, the Court of Federal Claims concluded that Interior had improperly applied the statute of limitations and required Interior to fully refund bp for the transportation costs identified in its 2013 Refund Demand. *BP Exploration & Production Inc. v. U.S.*, 147 Fed. Cl. 623, 629 (2020). Based on its refund demand and the Court of Federal Claims' decision, bp recovered royalty overpayments attributable to some of the *very same* costs at issue here, including for example capital costs incurred from 2001-04 for fabrication of the Na Kika North FL Pipeline (identified in the JADE records and other electronic files as WBS Element E-003099-14.01.20.06.01).

42.    The Order disallowed bp's deduction of the *same* capital costs that ONRR allowed in the 2009 Audit and that ONRR paid to bp in response to the 2013 Refund Demand, including for example (and without limitation) capital costs incurred from 2001-04 for fabrication of the Na Kika North FL Pipeline (identified in the JADE records and other electronic files as WBS Element E-003099-14.01.20.06.01).

### The RSFA 33-Month Period and bp's Administrative Appeal

**43.**     RSFA mandates that Interior issue "a final decision in any administrative proceeding . . . within 33 months from the date such proceeding was commenced." 30 U.S.C. § 1724(h)(1). "The 33-month period may be extended by any period of time agreed upon in writing." *Id.* The 33-month period, as extended by relevant extension agreements, is referred to herein as the "RSFA 33-Month Period." If Interior "fail[s]" to issue a final decision within the RSFA 33-Month Period in an administrative proceeding, then under 30 U.S.C. § 1724(h)(2):

> (A) [Interior] shall be deemed to have issued and granted a decision in favor of the appellant as to any nonmonetary obligation and any monetary obligation the principal amount of which is less than $10,000; and

> (B) [Interior] shall be deemed to have issued a final decision in favor of the Secretary, which decision shall be deemed to affirm those issues for which the agency rendered a decision prior to the end of such period, as to any monetary obligation the principal amount of which is $10,000 or more, and the appellant shall have a right to judicial review of such deemed final decision in accordance [the APA].

**44.**     ONRR's issuance of the Order triggered bp's right to appeal the Order to the IBLA. The RSFA 33-Month Period applied to the Order and bp's administrative appeal of the Order.

**45.**     bp timely appealed the Order to the IBLA, and bp's appeal was docketed as IBLA-2020-0340. bp filed a brief in support of its appeal in January 2021; ONRR submitted its Answer to bp's brief in May 2021; bp submitted a reply brief in August 2021.

**46.**     In support of its appeal, bp also submitted two sworn declarations signed by Mr. Williamson Turner, bp's Advisor for Production and Royalty Compliance. Mr. Turner's declarations established (*inter alia*) that prior to the 2018 Audit, ONRR had previously audited (in more than one other audit) the *same* non-arm's-length costs that it reviewed during the 2018 Audit; that during those earlier audits, bp produced effectively identical documentation as the

documentation submitted in support of the 2018 Audit (where available, bp also submitted invoice documentation during the earlier audits); and based on those earlier audits, for several years ONRR accepted bp's deductions of the *very same costs* that ONRR disallowed in the Order. During the administrative appeal, ONRR did not submit any evidence controverting Mr. Turner's declaration.

47.     During bp's administrative appeal, bp and ONRR agreed to extend the RSFA 33-Month Period through June 11, 2024.

48.     The IBLA did not issue a decision resolving bp's appeal within the RSFA 33-Month Period. Thus, the IBLA lost jurisdiction of bp's appeal on June 12, 2024.

49.     In recent years, the IBLA has routinely allowed the RSFA 33-Month Period to expire without issuing a final decision in administrative proceedings to which the RSFA 33-Month Period applies. *See e.g.*, *DCOR, LLC v. United States DOI*, No. 3:21-cv-00120-N, 2023 U.S. Dist. LEXIS 221633 (N.D. Tex. 12/13/2023) (judicial review of deemed final decision under Section 1724(h)); *BP America Production Co. v. Haaland*, 87 F.4th 1226, 1236 (10th Cir. 2023), *reh'g denied*, No. 22-8024 (10th Cir. Feb. 12, 2024) (same); *Oxy USA Inc. v. United States DOI*, 32 F.4th 1032 (10th Cir. 2022) (same); *Devon Energy Prod. Co., L.P. v. United States DOI*, No. CIV-20-053-D, 2024 U.S. Dist. LEXIS 84463 (W.D. Oklahoma May 9, 2024) (same); *Ovintiv USA, Inc. v.* Haaland, 665 F. Supp. 3d 59 (D.D.C. 2023) (same); *Cont'l Res., Inc. v. Jewell*, 846 F.3d 1232 (D.C. Cir. 2017) (same); *BP Exploration & Production Inc. v. U.S.*, *supra* Para. 41 (same); *Devon Energy Prod. Co., L.P. v. Gould*, 421 F. Supp. 3d 1213 (D. Wyo. 2019) (same); *Century Exploration Limited Partnership et al. v. United States Department of Interior et al.*, No. 6:24-cv-00520 (W.D. La. *filed* Apr. 18, 2024) (seeking judicial review of deemed final decision under Section 1724(h)); *Woodside Energy (Americas) Inc. v. U.S. Dept. of the Interior et al.*, No. 6:24-cv-01268 (W.D. La. filed Sept. 16, 2024) (same); *etc.*

50.  Under Section 1724(h), when the RSFA 33-Month Period expired, the Secretary was "deemed": (A) under Section 1724(h)(2)(A) "to have issued and granted a decision in favor of [bp] as to" the restructured accounting directive (due to its non-monetary nature) and the 105 monetary obligations the principal amount of each of which is less than $10,000; and (B) under Section 1724(h)(2)(B) "to have issued a final decision in favor of the Secretary," triggering bp's right to judicial review, "as to any monetary obligation the principal amount of which is $10,000 or more[.]"

51.  bp seeks declaratory relief regarding the effect of the Interior's "failure" to "issue a final decision" before the RSFA 33-Month Period expired and the scope of the Secretary's deemed final decision under Section 1724(h)(2)(B), which sets the scope of the Court's jurisdiction (*see* Count I below). And, bp seeks that the deemed final decision under Section 1724(h)(2)(B) (and the underlying Order) be set aside as arbitrary, capricious, an abuse of discretion, and not in accordance with law (*see* Counts II – VIII below).

## COUNT I

### bp Seeks Declaratory Relief.

52.  The allegations in paragraphs 1-51 are incorporated by reference.

53.  bp seeks a declaratory judgment that because Interior "fail[ed]" to issue a decision before the RSFA 33-Month Period expired, the Secretary was deemed to have issued and granted a decision in bp's favor under Section 1724(h)(2)(A) as to (i) the 105 individual monetary obligations alleged due in the Order, the principal amount of each of which is less than $10,000, and (ii) the requirement in the Order that bp perform a restructured accounting; and, therefore, that the Court lacks jurisdiction over those matters under Section 1724(h)(2)(B).

54.     When the RSFA 33-Month Period expired, the Secretary was deemed under Section 1724(h)(2)(A) "to have issued and granted a decision in favor of [bp] as to any nonmonetary obligation and any monetary obligation the principal amount of which is less than $10,000; and" deemed under Section 1724(h)(2)(B) "to have issued a final decision in favor of the Secretary . . . as to any monetary obligation the principal amount of which is $10,000 or more[.]" 30 U.S.C. § 1724(h)(2).

55.     RSFA's Section 1724(h)(2)(B) "confer[s] jurisdiction on the federal courts[.]" *See Murphy Exploration & Production Co. v. U.S. Dep't of Interior*, 252 F.3d 473, 478 (D.C. Cir. 2001), *reh'g denied in part*, 270 F.3d 957 (D.C. Cir. 2001). And, under RSFA federal court jurisdiction over decisions issued by operation of law under Section 1724(h) extends only "as to any monetary obligation" deemed decided in favor of Interior under Section 1724(h)(2)(B). *See supra* Para. 43.

56.     <u>The "Monetary" Obligations.</u> The Order directs bp to remit a total of $597,424.95 in additional royalties, which total amount is attributable to 123 individual monetary royalty obligations. *See* Order, Enclosure 7. When the RSFA 33-Month Period expired, under Section 1724(h)(2)(A) the Secretary was "deemed to have issued and granted a decision in favor of [bp] as to" the 105 monetary royalty obligations covered by the Order that were each for a principal amount of "less than $10,000" (*see* Order, Enclosure 7).

57.     "It is well established that interpreting statutes granting jurisdiction to Article III courts is exclusively the province of the courts." *Murphy Exploration & Production Co.*, 252 F.3d at 478 (internal quotations omitted).  Section 1724(h)(2)(B), a jurisdction-conferring statute, "does not grant powers to agencies" and does not give Interior authority to "regulate the scope of judicial power vested by the statute." *Id.* at 479 (internal quotations omitted). Nonetheless, Interior

16

has adopted regulations that define "monetary obligation" for purposes of the $10,000 threshold at Section 1724(h)(2) based on the "issue[s] or type[s] of underpayment[s,]" which distorts the clear threshold established in the statute based on the individual obligations captured by the relevant administrative proceeding. *See* 43 C.F.R. § 4.903 (2013). Because "the jurisdiction of the federal courts is outside [Interior's] expertise[,]" Interior's regulatory interpretation is irrelevant to the Court's analysis of the scope of its jurisdicton under Section 1724(h)(2)(B). In any event, Interior's regulatory definition of "monetary obligation" (and the application of that definition in its other regulations) unlawfully contradicts the statute and exceeds the scope of Interior's statutory authority. *See Santa Fe Snyder Corp. v. Norton*, 385 F.3d 884 (5th Cir. 2004) (Interior did not have authority to promulgate regulations that contradicted the statute).

58.        In *BP America Production Co. v. Haaland*, the Tenth Circuit concluded that Section 1724(h)'s reference to "monetary obligations" is ambiguous and construed that statutory language consistently with Interior's regulations. 87 F.4th 1226, 1236 (10th Cir. 2023), *reh'g denied*, No. 22-8024 (10th Cir. Feb. 12, 2024). bp respectfully avers that the Tenth Circuit's analysis contradicts the clear language of the statute, creates ambiguity where none exists, and impermissibly expands the scope of the limited federal court jurisdiction conferred by Congress in Section 1724(h). *See Boelens*, 748 F.2d at 1067 ("[S]tatutes conferring jurisdiction on federal courts are to be strictly construed, and doubts resolved against federal jurisdiction.").

59.        The Restructured Accounting Directive. The Order also instructs bp to "perform a restructured accounting." Order, Enclosure 1, p. 3. If the Order lawfully requires a restructured accounting (which bp does not concede, *see infra* Count VIII), then under RSFA's plain language, the Secretary was deemed to have "issued and granted a decision in favor of [bp]" under Section 1724(h)(2)(A) because that obligation is not a monetary obligation under RSFA.

60.     Interior's regulations define "monetary obligation" for purposes of the $10,000 threshold at Section 1724(h)(2) in the context of an order that "asserts a monetary obligation with a stated amount of additional royalties due, plus an order to perform a restructured accounting" to include "the estimated amount due under the restructured accounting[.]" *See* 43 C.F.R. § 4.903 (2013). But, as explained above, because interpreting jurisdiction-conferring statutes is "exclusively the province of the courts" (*Murphy Exploration & Production Co.*, 252 F.3d at 478), Interior's regulatory interpretation of the $10,000 threshold in Section 1724(h)(2) is irrelevant to the Court's analysis. *See supra* Para. 57. Even under that regulation, the Secretary was "deemed to have issued and granted a decision in favor of [bp]" as to the restructured accounting directive because the Order does not allege any "estimated amount due" (43 C.F.R. § 4.903 (2013)) in connection with that directive. Further, Interior's regulatory definition of "monetary obligation" (and the application of that definition in its other regulations) unlawfully contradicts RSFA and exceeds the scope of Interior's statutory authority. *See Santa Fe Snyder Corp.*, *supra*.

61.     In sum, the Court "must determine the scope of [the] congressional conferral of jurisdiction [in Section 1724(h)(2)(B)] without consulting the views of [Interior,]" as expressed in Interior's regulations. *Murphy Exploration & Production Co.*, 252 F.3d at 480. Under Section 1724(h)(2)(A), when the RSFA 33-Month Period expired, the Secretary was deemed "to have issued and granted a decision in favor of [bp] as to" the restructured accounting directive (due to its non-monetary nature) and the 105 monetary obligations the principal amount of each of which is less than $10,000. Thus, the Court has jurisdiction under Section 1724(h)(2)(B) only over the other the 18 monetary obligations alleged due in the Order.

62.     The statute clearly compels these consequences of Interior's failure to issue a final decision within the RSFA 33-Month Period and limitations on federal court jurisdiction to review

deemed agency action under Section 1724(h). But even if the court concludes that Section 1724(h) is ambiguous (which bp does not concede), then any "doubts" must be resolved "against federal jurisdiction" because statutes conferring federal jurisdiction must be strictly construed. *Boelens*, 748 F.2d at 1067.  And, the Court "may not defer to an agency interpretation" on the basis of ambiguity. *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024). Further, because Section 1724(h)(2)(B) "give[s] [bp] 'a direct recourse to federal court,'" it would be "inappropriate" for the Court to consult Interior's "executive interpretation[]" of this jurisdiction-conferring statute "to resolve ambiguities surrounding the scope of [bp's] judicially enforceable remedy." *Murphy Exploration & Production Co.*, 252 F.3d at 478 (*quoting Adams Fruit Co., Inc. v. Barrett*, 494 U.S. 638, 650 (1990), *superseded by statute*)).

## COUNT II

### The Deemed Final Decision Under Section 1724(h)(2)(B)
### Exceeds Interior's Limited Statutory Authority.

63.     The allegations in paragraphs 1-62 are incorporated by reference.

64.     As explained in greater detail above, the statute requires that lessees "establish and maintain any records . . . that the Secretary may, by rule, reasonably require" to support the lessee's royalty accounting. 30 U.S.C. § 1713. And, under the statute, lessees must maintain and produce the records required "by rule" (30 U.S.C. § 1713(b)) for seven years (30 U.S.C. § 1724) "after the records are generated" (30 U.S.C. § 1713(b)).

65.     To the extent that the Secretary was deemed to have issued a final decision in Interior's favor under Section 1724(h)(2)(B) (and correspondingly, to the extent of the Court's jurisdiction) (*see supra* Count I), that deemed final decision is "in excess of statutory jurisdiction, authority, [and] limitations" and "short of statutory right," 5 U.S.C. § 706(2)(C), and "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A),

because it, for example and among other reasons: (i) unlawfully requires bp to substantiate its non-arm's-length deductions with documentation that Interior did not "by rule" require; (ii) unlawfully requires bp to substantiate it non-arm's-length deductions by producing documentation generated decades ago; and (iii) to the extent that Interior relies on its regulatory definition of "monetary obligation" to expand the scope of the deemed final decision under Section 1724(h)(2)(B), its regulation and Interior's reliance on that regulation are unlawful. *See e.g. Kerr-McGee Oil & Gas Corp. v. U.S. Dep't of Interior*, 554 F.3d 1082 (5th Cir. 2009) (royalty payment order exceeded scope of Interior's statutory authority). Even if the statute is ambiguous, which bp does not concede, the Court "may not defer" to Interior's regulatory interpretations of the statue on the basis of ambiguity. *Loper Bright Enters.*, 144 S. Ct. at 2273.

### COUNT III

#### The Deemed Final Decision Under Section 1724(h)(2)(B) Exceeds Interior's Limited Regulatory Authority.

**66.**     The allegations in paragraphs 1-65 are incorporated by reference.

**67.**     "It is elementary administrative law that an agency must operate within the confines of its own regulations." *American Petroleum Inst. v. EPA*, 787 F.2d 965, 975 (5th Cir. 1986). Under ONRR's regulations, a lessee is entitled to deduct from the value on which it pays royalties the lessee's "reasonable, actual" costs for transportation, including non-arm's-length costs. And, under the applicable regulations, a lessee must (i) retain "records," including "computer programs," "automated files," and "supporting systems documentation used to produce automated reports" that "demonstrate" that the lessee's royalty payments comply with the regulations (30 C.F.R. § 1212.51(2013)), and (ii) upon ONRR's request, submit "all data used to calculate" a reported transportation deduction (30 C.F.R. §§ 1206.115(c) (2013), 1206.157(c)(iii) (2013)).

68.     To the extent that the Secretary was deemed to have issued a final decision in Interior's favor under Section 1724(h)(2)(B) (and correspondingly, to the extent of the Court's jurisdiction) (*see supra* Count I), that deemed final decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), because it (for example and among other reasons) disallows bp's deduction of the "reasonable, actual" costs (30 C.F.R. §§ 1206.109 (2013) (oil), 1206.156-157 (2013) (gas)) incurred by bp to transport lease production to an off-lease sales or valuation location, despite that bp maintained and produced all records that are required under the applicable regulations to substantiate its deductions.

<u>**COUNT IV**</u>

<u>**The Deemed Final Decision Under Section 1724(h)(2)(B) Imposes a Substantive Rule in Violation of the Mandatory Notice-and-Comment Procedure Required by the APA.**</u>

69.     The allegations in paragraphs 1-68 are incorporated by reference.

70.     Under the APA, "substantive rules" are unenforceable unless and until an agency adopts those rules through the mandatory notice and comment rulemaking process. 5 U.S.C. § 553. A substantive rule is one that "creates law" and "grant[s] rights, impose[s] obligations, or produce[s] other significant effects on private interests." *W & T Offshore, Inc. v. Bernhardt*, 946 F.3d 227, 237 (5th Cir. 2019).

71.     To the extent that the Secretary was deemed to have issued a final decision in Interior's favor under Section 1724(h)(2)(B) (and correspondingly, to the extent of the Court's jurisdiction) (*see supra* Count I), that deemed final decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), and unlawfully fails to comply with "procedure required by law," 5 U.S.C. § 706(2)(D), because it seeks to impose a substantive rule in violation of the mandatory notice-and-comment procedure required by the APA by imposing an extra-regulatory, blanket policy requiring lessees to maintain and produce (*e.g.*)

original "invoices" (regardless of when they were generated) to substantiate their deductions of transportation costs. *See W & T Offshore, Inc.*, 946 F.3d at 237; *Shell Offshore Inc. v. Babbitt*, 238 F.3d 622 (5th Cir. 2001); *Phillips Petroleum Co. v. Johnson*, 22 F.3d 616, 620 (5th Cir. 1994).

<u>C<small>OUNT</small> V</u>

<u>The Deemed Final Decision Under Section 1724(h)(2)(B) is Unlawful
Because Interior Failed to Engage in Reasoned Decisionmaking.</u>

**72.**    The allegations in paragraphs 1-71 are incorporated by reference.

**73.**    Fundamental principles of administrative law mandate that an agency action be based on "reasoned decisionmaking," *e.g.*, *Allentown Mack Sales & Serv. v. NLRB*, 522 U.S. 359, 374 (1998), which requires an agency to consider all "relevant factors" and to articulate a rational connection between the facts before it and its ultimate conclusion. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Further, it is well-established that an agency's regulatory enforcement action may be upheld only if it is "authoritative," "expertise-based," and reflects the agency's "fair and considered" judgment. *Kisor v. Wilkie*, 588 U.S. 558, 559 (2019). Consistently, an agency "must at the very least provide support for critical facts underlying its decisions." *Shell Oil Co. v. FERC*, 707 F.2d 230, 235 (5th Cir. 1983). And, an agency "cannot ignore evidence contradicting its position" (*Genuine Parts Co. v. EPA*, 890 F.3d 304, 312 (D.C. Cir. 2018)), cannot fail "to put forth evidence" supporting its conclusions (*Texas v. U.S. E.P.A.*, 690 F.3d 670, 678 (5th Cir. 2012)), and cannot act "contrary to the evidence before it" (*ExxonMobil Pipeline Co. v. U.S. Dep't of Transp.*, 867 F.3d 564, 583 (5th Cir. 2017)).

**74.**    To the extent that the Secretary was deemed to have issued a final decision in Interior's favor under Section 1724(h)(2)(B) (and correspondingly, to the extent of the Court's jurisdiction) (*see supra* Count I), that deemed final decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), because Interior failed

to engage in "reasoned decisionmaking," failed to consider all "relevant factors," failed to articulate a "rational connection" between the facts and its deemed final decision, and ignored the evidence before it. For example (and without limitation), rather than engaging in *any* decisionmaking, much less "reasoned decisionmaking" as required, Interior instead elected to allow a final decision to occur by operation of law, notwithstanding bp's submission of voluminous legal arguments and factual evidence establishing several deficiencies in the Order. Further, Interior *completely ignored* that ONRR has previously audited many of the same costs at issue here and accepted bp's deduction of those same costs for several years. Further, the Order unreasonably and unlawfully imposes impossible standards on bp, including (*e.g.*) that bp produce documents that were ruined due to the flooding caused by Hurricane Harvey. *See Alliance for Cannabis Therapeutics v. Drug Enforcement Admin.*, 930 F.2d 936 (D.C. Cir. 1991). Interior also failed to support its conclusions with evidence.

<u>**COUNT VI**</u>

<u>**The Deemed Final Decision Under Section 1724(h)(2)(B) is Unlawful Under Established Principles That Preclude Re-litigation of Settled Matters.**</u>

**75.** The allegations in paragraphs 1-74 are incorporated by reference.

**76.** Under well-established principles (*e.g.*, *res judicata*, *collateral estoppel*, *stare decisis*), Interior may not re-litigate an issue resolved by a federal court through (*e.g.*) issuance of an order or the requirement that a lessee produce documents. *See e.g. Amoco Prod. Co. v. Hodel*, 815 F.2d 352 (5th Cir. 1987) (vacating and remanding with instructions to transfer case to the Court of Federal Claims; recognizing that the lessee's concerns about "future audits" are assuaged by the doctrines of *stare decisis* and *res judicata*); *Indep. Petroleum Ass'n of Am. v. Babbitt*, 971 F. Supp. 19, 34 (D.D.C. 1997), *aff'd*, 235 F.3d 588 (D.C. Cir. 2001). Relatedly, Interior has itself

acknowledged that it is "bound" by its "affirmative recognition" that certain costs may be deducted as part of a transportation allowance. *See Viersen & Cochran*, 134 IBLA 155 (1995).

77.    To the extent that the Secretary was deemed to have issued a final decision in Interior's favor under Section 1724(h)(2)(B) (and correspondingly, to the extent of the Court's jurisdiction) (*see supra* Count I), that deemed final decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), because it unlawfully denied bp's deduction of the exact same non-arm's-length transportation costs that the Court of Federal Claims in *BP Exploration & Production Inc. v. United States.*, 147 Fed. Cl. 623 (2020) confirmed are deductible and that ONRR has previously audited and allowed as deductible.

<u>**C**OUNT **VII**</u>

**<u>The Deemed Final Decision Under Section 1724(h)(2)(B)</u>**
**<u>Unlawfully Deprives bp of Fair Notice.</u>**

78.    The allegations in paragraphs 1-77 are incorporated by reference.

79.    Under the United States Constitution and fundamental principles of administrative law, an agency must provide the regulated community "fair notice" of the standards with which the agency expects the regulated community to conform. *ExxonMobil Pipeline Co. v. U.S. Dep't of Transportation*, 867 F.3d at 578 (*quoting Diamond Roofing Co. v. Occupational Safety & Health Review Com.*, 528 F.2d 645 (5th Cir. 1976)). The fair notice principle prevents agency action that "creates 'unfair surprise' to regulated parties." *Kisor*, 588 U.S. at 579.

80.    To the extent that the Secretary was deemed to have issued a final decision in Interior's favor under Section 1724(h)(2)(B) (and correspondingly, to the extent of the Court's jurisdiction) (*see supra* Count I), that deemed final decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), and unlawfully fails to comply with "procedure required by law," 5 U.S.C. § 706(2)(D), because prior to the Audit and

Order, bp "could not have understood with 'ascertainable certainty'" that Interior would disallow bp's deductions of the *very same* costs that ONRR had previously audited and allowed on the basis that the documentation that bp maintained and produced during the Audit – the *very same* type of documentation that ONRR has historically accepted – was insufficient.

<u>**C**OUNT **VIII**</u>

<u>**The Deemed Final Decision Under Section 1724(h)(2)(B)**</u>
<u>**Exceeds Interior's Statutory Authority.**</u>

**81.**     The allegations in paragraphs 1-80 are incorporated by reference.

**82.**     Under RSFA, ONRR may issue an "order to perform a restructured accounting" when it:

> determines during an audit of a lessee or its designee that the lessee or its designee should recalculate royalty due on an obligation based upon the Secretary's … finding that the lessee or its designee has made identified underpayments or overpayments which are demonstrated by the Secretary … to be based upon repeated, systemic reporting errors for a significant number of leases or a single lease for a significant number of reporting months with the same type of error which constitutes a pattern of violations and which are likely to result in either significant underpayments or overpayments.

30 U.S.C. § 1724(d)(4)(B)(i). RSFA imposes several requirements on ONRR's issuance of a restructured accounting order. For instance (and by way of illustration only), RSFA requires that a restructured accounting order afford the recipient a "reasonable period of time (but not less than 60 days) within which to perform the restructured accounting." *Id.* at 1724(d)(4)(B)(ii)(IV).

**83.**     If the deemed final decision under Section 1724(h)(2)(B) is deemed to have upheld the Order's requirement that bp perform a "restructured accounting," which bp does not concede (*see supra* Count I), the deemed final decision (and the underlying Order) is "in excess of statutory jurisdiction, authority, [and] limitations" and "short of statutory right," 5 U.S.C. § 706(2)(C), is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C.

§ 706(2)(A), and fails to comply with "procedure required by law," 5 U.S.C. § 706(2)(D), because it requires a restructured accounting but fails to comply with the clear statutory requirements for issuance of a restructured accounting order. For example, and without limitation, (i) the Order was not based on ONRR's identification of any "reporting" error, and (ii) the broad scope of the restructured accounting directive is not supported by the limited scope of the Audit. *See e.g. Kerr-McGee Oil*, 554 F.3d 1082 (royalty payment order exceeded scope of Interior's statutory authority).

### Prayer For Relief

WHEREFORE, bp prays that this Court:

(a) Enter an order declaring that because Interior "fail[ed]" to issue a decision before the RSFA 33-Month Period expired, the Secretary was deemed to have issued and granted a decision in bp's favor under Section 1724(h)(2)(A) as to (i) the 105 individual monetary obligations alleged due in the Order, the principal amount of each of which is less than $10,000, and (ii) the requirement in the Order that bp perform a restructured accounting; and, therefore, that the Court lacks jurisdiction over those matters under Section 1724(h)(2)(B).

(b) Render a judgment setting aside the deemed final decision under Section 1724(h)(2)(B) on the grounds that: (i) it is in excess of statutory authority or limitation; (ii) it is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law; (iii) it fails to comply with procedure required by law; and/or (iv) it deprives bp of due process, including the fair notice to which it is entitled.

(c) Render a judgment setting aside the Order on the grounds that: (i) it is in excess of statutory authority or limitation; (ii) it is arbitrary, capricious, an abuse of discretion, or otherwise

contrary to law; (iii) it fails to comply with procedure required by law; and/or (iv) it deprives bp of due process, including the fair notice to which it is entitled.

(d) Enter an order enjoining Interior (including ONRR) from enforcing the deemed final decision under Section 1724(h)(2)(B) and the Order.

(e) Award bp its costs of litigation, including attorney's fees.

(f) Grant such other relief as may be appropriate under the circumstances.

Dated: 6 December 2024                           Respectfully submitted,

                                                 *s/Sarah Y. Dicharry*
                                                 Sarah Y. Dicharry, T.A., La. Bar No. 34514
                                                 Madeline M. Freese, La. Bar No. 40780
                                                 JONES WALKER LLP
                                                 201 St. Charles Ave.
                                                 New Orleans, LA 70170
                                                 sdicharry@joneswalker.com
                                                 mfreese@joneswalker.com
                                                 Phone: (504) 582-8490
                                                 Facsimile: (504) 589-8490

                                                 William E. Sparks, TX Bar No. 24031619
                                                 *Pro Hac Vice forthcoming*
                                                 JONES WALKER LLP
                                                 10001 Woodloch Forest Dr
                                                 The Woodlands, TX 77380
                                                 wsparks@joneswalker.com
                                                 Phone: (281) 296-4552
                                                 Facsimile: (281) 296-4575

                                                 Attorneys for BP Exploration & Production Inc.
                                                     and BP America Inc.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, following issuance of summonses, service will be made pursuant to Federal Rule of Civil Procedure 4(i).

*s/Sarah Y. Dicharry*

#103367321v1